THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOHAMED HOUHAMDI,

                     Petitioner,

      v.

LORETTA LYNCH, et al.,

                   Respondents.

CASE NO. C15-1668-JCC

ORDER ADOPTING REPORT AND
RECOMMENDATION

      This matter comes before the Court on the Report and Recommendation of the Honorable
James P. Donohue, United States Magistrate Judge (Dkt. No. 18), Petitioner Houhamdi's
Objections (Dkt. No. 28), and the Government's Response (Dkt. No. 29). Having thoroughly
considered the parties' briefing and the relevant record, the Court finds oral argument
unnecessary and hereby ADOPTS the Report and Recommendation and dismisses Mr.
Houhamdi's habeas petition for the reasons explained herein.

## I.     BACKGROUND

      Petitioner Mohamed Houhamdi is an Algerian native who entered the United States near
San Ysidro, California on December 7, 2013 without immigration documents. (Dkt. No. 14-1 at
4.) Upon entry, Mr. Houhamdi was apprehended, served with a Notice and Order of Expedited
Removal determining him inadmissible for entry into the United States, and held in immigration
detention. (*Id.* at 4, 7, 9.) Mr. Houhamdi was detained from December 7, 2013 to June 23 of the

next year, at which time he was released and ordered to report to an Immigration and Customs Enforcement ("ICE") office in San Diego on July 16, 2014 with appropriate travel documents. (Dkt. No. 14-2 at 2.)

Mr. Houhamdi's next contact with law enforcement, however, occurred when he was arrested for domestic violence charges in Nisqually, Washington in October 2014. (Dkt. No. 14-6 at 6.) These domestic charges resulted in a no-contact order prohibiting Mr. Houhamdi from contacting his wife and her children. (Dkt. No. 14-2 at 5–9, 11–12.) On February 19, 2015, Mr. Houhamdi was convicted of criminal trespass and of violating the no-contact order. (Dkt. No. 14-4 at 8.) The same day, February 19, 2015, Mr. Houhamdi was arrested by ICE and taken to the Northwest Detention Center. (*Id* .at 15.) He has been detained awaiting removal to Algeria since that date, over sixteen months ago. (Dkt. No. 6 at 1.)

There have been several attempts to deport Mr. Houhamdi to Algeria. On February 27, 2015, ICE requested travel documents from the Algerian Consulate in New York City. (Dkt. No. 15 at 1.) In March 2015, an ICE official indicated that receiving a travel document for Mr. Houhamdi would be "unlikely" as "Algeria has not issued a travel document in over 3 years." (Dkt. No. 14-6 at 19.) However, this tide began to slowly change. By December 2015—after considerable waiting and follow-up—ICE officials stated that progress was being made in Mr. Houhamdi's removal case, and the Embassy of Algeria "had just issued their first travel document to ICE in years." (Dkt. No. 15 at 2.) Algerian Consul, Djaffar Chachoua, interviewed Mr. Houhamdi via telephone on August 28, 2015. (*Id.*) On January 12, 2016, an e-mail was received from the ICE Headquarters Removal and International Operations Unit ("HQRIO") indicating the possibility of receiving travel documents for five Algerian individuals, including Mr. Houhamdi. (*Id.*) The HQRIO estimated that Mr. Houhamdi would be deported in "late February, 2016." (*Id.* at 3.)

As demonstrated by the filing of the present habeas petition, Mr. Houhamdi was not so removed. On March 22, 2016, he was transported from the Northwest Detention Center to the

Krome Detention Center in Miami, Florida in anticipation of being flown on a "Special High Risk Charter" flight to Algeria. (Dkt. No. 30 at 3.) However, on March 25, 2016 the charter flight was cancelled "due to exorbitant costs." (*Id.*) Mr. Houhamdi was transferred back to the Northwest Detention Center on April 5, 2016. (*Id.*) On April 18, 2016, Mr. Houhamdi was scheduled for an escorted removal to Algeria on a commercial flight to leave May 3rd. (*Id.*) The Algerian Embassy was notified of these plans. (*Id.*) However, on May 2, 2016, the flight was cancelled because the Algerian Embassy had not issued a travel document. (*Id.*) Mr. Houhamdi was, once again, rescheduled for removal on June 7, 2016. (*Id.* at 4.) As of May 27, 2016, ICE had still not received a travel document from the Algerian Embassy. (*Id.*)

Mr. Houhamdi brought this habeas petition *in forma pauperis* on October 19, 2015. (Dkt. No. 1.) His habeas petition was filed on November 25, 2015 (Dkt. No. 6) and he was appointed counsel on December 2, 2015 (Dkt. No. 9). The Government moved to dismiss the habeas petition on the grounds that Mr. Houhamdi's removal to Algeria was "significantly likely to occur in the reasonably foreseeable future." (Dkt. No. 12.) On March 17, 2016, Judge Donohue issued a Report and Recommendation that this Court grant the Government's Motion to Dismiss. (Dkt. No. 18.) At the request of the Federal Public Defender, the Court deferred its consideration of the R&R in order to allow counsel access to pertinent immigration documents and leave to file objections past the original deadline. (Dkt. Nos. 19, 20, 23, 24, 25, 27.) Mr. Houhamdi objects to the R&R, arguing that the timeline of his case establishes that his removal to Algeria is not, in fact, likely to occur in the foreseeable future. (Dkt. No. 28 at 1.)

## II.   DISCUSSION

## A.   Standard of Review

Upon objection to a magistrate judge's report and recommendation, district courts are required to review *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Mr. Houhamdi objects both to Judge Donohue's conclusion that travel documents from Algeria are "likely to issue in

1    the foreseeable future" (Dkt. No. 28 at 1–2) and to the legal test applied by Judge Donohue,

2    requiring him to prove either that "Algeria will refuse to accept him or that removal would

3    violate United States law." (*Id.* at 2; *see also* Dkt. No. 18 at 6.)

4    **B.    Report and Recommendation and Objections**

5           Judge Donohue concluded that, in light of the Algerian Embassy's recent progress in

6    issuing travel documents, Mr. Houhamdi's argument that his request for such documents would

7    be "categorically denied" was defeated. (Dkt. No. 18 at 5.) Judge Donohue acknowledged that

8    the issuance of one travel document "does not foretell issuance of a travel document for

9    Petitioner." (*Id.*). The Report and Recommendation concludes that, absent proof that Algeria will

10   deny his request for travel documents, Mr. Houhamdi "fails to show that his detention is

11   indefinite under *Zadvydas* [*v.. Davis*, 533 U.S. 678 (2001)]." (*Id.* at 6–7.) In so concluding, Judge

12   Donohue emphasized the correspondence between ICE and the Algerian Embassy. (*Id.*)

13          Mr. Houhamdi argues, both in response to the motion to dismiss and in objection to the

14   Report and Recommendation, that the history of his case establishes just the opposite: given the

15   length of his detention and lack of concrete progress, his removal to Algeria is *not* likely to occur

16   in the reasonably foreseeable future. (Dkt. No. 16 at 5; Dkt. No. 28 at 1.) Moreover, Mr.

17   Houhamdi argues, the Report and Recommendation is based on an improper interpretation of

18   binding authority; specifically, that a habeas petitioner in his circumstances need not

19   affirmatively prove that Algeria would refuse to accept him or that his removal would violate

20   U.S. law. (Dkt. No. 28 at 2.) Mr. Houhamdi urges this Court to look closely at Ninth Circuit and

21   Supreme Court precedent, and upon *de novo* review, the Court does so now.

22   **C.    Applicable Law**

23          8 U.S.C. § 1231(a)(6) authorizes ICE to detain persons, like Mr. Houhamdi, determined

24   inadmissible to the United States and subject to a final order of removal. Such detention,

25   however, may not be indefinite: "once removal is no longer reasonably foreseeable, continued

26   detention is no longer authorized by statute." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). In

1  the context of habeas review of § 1231(a)(6) detention, the Supreme Court has instructed courts

2  to first "ask whether the detention in question exceeds a period reasonably necessary to secure

3  removal." *Id.* A period of six-months is deemed "presumptively reasonable." *Id.* at 701. After the

4  passage of such a period, if a detained person brings forth evidence establishing "good reason to

5  believe that there is no significant likelihood of removal in the reasonably foreseeable future,"

6  then the burden shifts to the Government to "respond with evidence to rebut that showing." *Id.*

7        In addition to the test set forth in *Zadvydas*, the Report and Recommendation stated that

8  Mr. Houhamdi "must show that Algeria will refuse to accept him or that removal would violate

9  United States law." (Dkt. No. 18 at 6). This requirement stems from a reading of Ninth Circuit

10  authority, *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008) and *Prieto-Romero v. Clark*,

11  534 F.3d 1053, 1063 (9th Cir. 2008).

12  **1.       Ninth Circuit Interpretations of *Zadvydas***

13        In *Prieto-Romero*, the Ninth Circuit applied *Zadvydas* to detention under another

14  statutory prevision, 8 U.S.C. § 1226(a), and rejected a petition for habeas relief because the

15  petitioner was "not stuck in a 'removable-but-unremovable limbo' as the petitioners in *Zadvydas*

16  were." 534 F.3d at 1063 (citing *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335,

17  347 (2005)).[1] The *Prieto-Romero* Court went on to reason that "[r]emoval was not reasonably

18  foreseeable in *Zadyvdas because* no country would accept the deportees, or the United States

19  lacked an extradition treaty with their receiving countries." *Id.* (emphasis added).[2] The Ninth

20  Circuit summarized, "Prieto-Romero foreseeably remains *capable* of being removed—even if it

21  has not yet finally been determined that he *should* be removed—and so the government retains

22  an interest in assuring his presence at removal." *Id.* at 1065 (emphasis in original). The *Prieto-*

23  _____

24  [1] The *Jama* case dealt with the appropriate course of action in selecting a country to deport an
   inadmissible person to, and whether consent of the country is required. 543 U.S. at 337. In other words,

25  the "removable-but-unremovable" reference to *Zadvydas* is dictum.
   [2] The *Prieto-Romero* decision also cites *Clark v. Martinez*, 543 U.S. 371 (2005) where the detainees'

26  removal was deemed not reasonably foreseeable in part because the U.S. was not even involved in
   repatriation negotiations with Cuba. *Id.*

*Romero* decision points to several examples in which a person's removal was not deemed "reasonably foreseeable," for a variety of reasons, including (1) being stuck in an "unremovable" limbo based on U.S. law, (2) a lack of repatriation negotiations between the U.S. and the country of removal, or (3) evidence that the destination country will not accept the removed person. 534 F.3d at 1063–65. These examples have since been distilled into a rule *requiring* a habeas petitioner "to show that he would be unremovable even if the government defeated his petition for review." *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008). The Court struggles to identify the origins of the "unremovable" rule in Supreme Court precedent.

Upon thorough consideration of Mr. Houhamdi's objections and the relevant authority, the Court agrees that Mr. Houhamdi habeas petition should not hinge solely on his ability to show that "Algeria will refuse to accept him or that removal would violate United States law." (Dkt. No. 18 at 6.) In others words, while—as *Prieto-Romero* and *Diouf* discuss—the impossibility of a habeas petitioner's removal certainly insures that his detention is impermissibly "indefinite," the inverse is not also true: indefiniteness does not require a showing of impossibility. The Court turns to the original test established in *Zadvydas* in examining whether there exists "no significant likelihood of [Mr. Houhamdi's] removal in the reasonably foreseeable future," and then whether the Government has rebutted such a showing. *Zadvydas*, 533 U.S. at 701.

**2.     Reasonable Foreseeability of Mr. Houhamdi's Removal**

First, the Report and Recommendation states, and no party disputes, that Mr. Houhamdi's detention has far surpassed the presumptively reasonable six-month mark. (Dkt. No. 18 at 5.) The more pressing question for review, then, is whether Mr. Houhamdi's removal to Algeria is "reasonably foreseeable."

The Algerian Embassy has begun to consider requests for travel documents, although there is no evidence before the Court that travel documents will issue for Mr. Houhamdi in the reasonably foreseeable future. Moreover, the United States and Algeria do not have an

ORDER ADOPTING REPORT AND
RECOMMENDATION
PAGE - 6

1    extradition treaty. *See* "Treaties of Extradition" under 18 U.S.C. § 3181, *available at*:

2    http://www.state.gov/documents/organization/71600.pdf. Mr. Houhamdi has presented evidence

3    to doubt the likelihood of his removal to Algeria in the foreseeable future.

4         The Government has, however, rebutted this showing with evidence of phone calls

5    between ICE and the Algerian Consul, the scheduling of multiple flights to Algeria, and

6    interviews of Mr. Houhamdi by embassy officials. (*See* Dkt. No. 29 at 4–5.) Based especially on

7    the number of flights scheduled for Mr. Houhamdi in the recent past, the Court finds that his

8    removal to Algeria is, in fact, reasonably foreseeable. Accordingly, the Court ADOPTS the

9    ultimate conclusion of the Report and Recommendation and GRANTS the Government's motion

10   to dismiss Mr. Houhamdi's habeas petition.

11 **III.**    **CONCLUSION**

12        For the foregoing reasons, the Court ADOPTS the Report and Recommendation (Dkt.

13   No. 18). The Government's motion to dismiss (Dkt. No. 12) is GRANTED and the above-

14   captioned matter is dismissed with prejudice.

15        DATED this 30th day of June 2016.

16

17

18

19

20

21                        John C. Coughenour

22                        UNITED STATES DISTRICT JUDGE

23

24

25

26

ORDER ADOPTING REPORT AND
RECOMMENDATION
PAGE - 7